1  **MILSTEIN JACKSON**
   **FAIRCHILD & WADE, LLP**
2  Gillian L. Wade, State Bar No. 229124
   gwade@mjfwlaw.com
3  Sara D. Avila, State Bar No. 263213
   savila@mjfwlaw.com
4  Marc A. Castaneda, State Bar No. 299001
   mcastaneda@mjfwlaw.com
5  10250 Constellation Blvd., Suite 1400
   Los Angeles, CA 90067
6  Tel: (310) 396-9600
   Fax: (310) 396-9635
7
   *Attorneys for Plaintiff and the Proposed Class*
8

9

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13  JAMES WEEKS, individually and on    | Case No. 2:19-cv-6828
    behalf of all others situated;
14                                       
15          Plaintiff,                   | **CLASS ACTION COMPLAINT**

16      vs.                              | 1.   Violations of the Consumer Legal
17                                       |      Remedies Act, <u>Cal. Civ. C</u>. §§ 1750, *et seq*.
18  LOWE'S HOME CENTERS, LLC, a          | 2.   Violations of Unfair Competition Law,
    North Carolina limited liability     |      'Unfair' and 'Fraudulent' Prongs,
19  company, and DOES 1 through 100,     |      <u>Cal. Bus. & Prof. C.</u> §§ 17200, *et seq*.
    inclusive,
20                                       | 3.   Violations of Unfair Competition Law,
21          Defendants.                  |      'Unlawful' Prong, <u>Cal. Bus. & Prof. C.</u>
                                         |      §§ 17200, *et seq*.
22

23

24

25  //

26  //

27  //

28

---

CLASS ACTION COMPLAINT

Plaintiff JAMES WEEKS ("Plaintiff"), by his undersigned counsel, on behalf of himself and all persons similarly situated, brings this Class Action Complaint against Defendant Lowe's Home Centers, LLC ("Lowe's" or "Defendant"). Plaintiff alleges the following upon information and belief, except for those allegations that pertain to Plaintiff, which are based on Plaintiffs' personal knowledge:

## NATURE OF THE ACTION

1.    Plaintiff, by and through undersigned counsel, brings this action both on his own behalf and on behalf of the Class defined below, comprised of all individuals similarly situated within the State of California, to redress the unlawful and deceptive practices employed by Lowe's in connection with its sale of the herbicide Roundup®, which contains the active ingredient glyphosate. Glyphosate is known to be a Class 2A herbicide, meaning it is probably carcinogenic to humans.

2.    Defendant markets, advertises, distributes and sells various formulations of Roundup® which Plaintiff maintains are defective, dangerous to human health, unfit and unsuitable to be marketed and sold in commerce without proper warnings and directions as to the dangers associated with its use.

3.    Defendant's reckless, knowing, and/or willful omission of the carcinogenic and/or otherwise harmful components to Roundup® products constitutes unlawful and deceptive business practices violate California's Consumer Legal Remedies Act, Cal. Civ. C. §§ 1750, *et seq.* (the "CLRA") and the Unfair Competition Law, Cal. Bus. & Prof. C. §§ 17200, *et seq.* (the "UCL").

## JURISDICTION AND VENUE

4.    Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). Defendant is either incorporated and/or has its principal place of business outside the state in which Plaintiff and members of the proposed Class reside. Furthermore, there are more than 100 Class Members and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

5.     This Court has personal jurisdiction over Defendant because Defendant is a foreign limited liability company authorized to do business in California and registered with the California Secretary of State, and has sufficient minimum contacts with California or otherwise intentionally avails itself of the laws and markets of California, through the sale and distribution of its Roundup® products in California, to render the exercise of jurisdiction by the California courts permissible.

6.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendant has caused harm to Class Members residing in this district, and/or because Defendant is subject to personal jurisdiction in this district.

## PARTIES

7.     Plaintiff James Weeks is an individual, a resident of Oxnard, California, and a member of the Class alleged herein.

8.     Defendant LOWE'S HOME CENTERS, LLC is a North Carolina limited liability company, California Secretary of State Registry No. 201331610237, in "active" status, with a principal place of business in Mooresville, North Carolina. LOWE'S HOME CENTERS, LLC is an American retail company specializing in home improvement and is engaged in the marketing, sale, and distribution of the herbicide Roundup®, with the active ingredient glyphosate. All formulations of Roundup® are manufactured by non-parties Monsanto Company, Bayer Corporation, and/or Bayer AG.

9.     Upon information and belief, Defendants DOES 1 through 100 are subsidiaries, partners, or other entities that were involved in the sale of the herbicide Roundup®. The true names and capacities of the Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of

CLASS ACTION COMPLAINT

1    Court to amend this Complaint to reflect the true names and capacities of the DOE

2    Defendants when such identities become known.

3          10.    "Roundup" refers to all formulations of the Roundup® products sold by

4    Defendant, including, but not limited to, Roundup Landscape Weed Preventer,

5    Roundup Ready-To-Use   Killer III with Sure Shot Wand, Roundup Ready-To-Use

6    Weed & Grass Killer III with Comfort Wand, Roundup Ready-to-Use Weed & Grass

7    Killer III with Pump 'N Go 2 Sprayer, Roundup Ready-To-Use Weed & Grass Killer

8    III, Roundup Precision Gel Weed & Grass Killer, Roundup for Lawns Bug

9    Destroyer, Roundup For Lawns Ready-to-Use, Roundup For Lawns₁ Ready-to-Spray,

10   Roundup For Lawns₃ Ready-to-Spray, Roundup For Lawns₂ Concentrate, Roundup

11   for Lawns Crabgrass Destroyer1, Roundup Ready-To-Use Max Control 365 with

12   Comfort Wand, Roundup Concentrate MAX Control 365, Roundup Ready-To-Use

13   Extended Control Weed & Grass Killer Plus Weed Preventer II with Comfort Wand,

14   Roundup Ready-To-Use Extended Control Weed & Grass Killer Plus Weed

15   Preventer II with Pump 'N Go 2 Sprayer, Roundup Ready-To-Use Extended Control

16   Weed & Grass Killer Plus Weed Preventer II with Trigger Sprayer, Roundup

17   Concentrate Extended Control Weed & Grass Killer Plus Weed Preventer, Roundup

18   Ready-To-Use Poison Ivy Plus Tough Brush Killer with Trigger Sprayer, Roundup

19   Ready-To-Use Poison Ivy Plus Tough Brush Killer with Comfort Wand, Roundup

20   Concentrate Poison Ivy Plus Tough Brush Killer, Roundup Weed & Grass Killer

21   Concentrate Plus, Roundup For Lawns₂ Concentrate, Roundup Weed & Grass Killer

22   Super Concentrate, Roundup Weed & Grass Killer Super Concentrate, Roundup

23   Concentrate MAX Control 365, Roundup Concentrate Extended Control Weed &

24   Grass Killer Plus Weed Preventer, Roundup Concentrate Poison Ivy Plus Tough

25   Brush Killer, Roundup Pro No Leak Pump Backpack Sprayer (4 Gallon), Roundup

26   Pro Sprayer for Commercial Use (2 or 3 Gallon), Roundup No Leak Pump Backpack

27   Sprayer (4 Gallon), Roundup Pro No Leak Pump Backpack Sprayer with Stainless

28   Steel Components and Deluxe Comfort Harness (4 Gallon), Roundup Multi-Use

3

CLASS ACTION COMPLAINT

Home and Garden Sprayer (1, 2, or 3 Gallon), or any other formulation thereof containing the active ingredient glyphosate.

11.   Defendant transacted and conducted business within the State of California that relates to the allegations in this Complaint.

12.   Defendant derived substantial revenue from goods and products used in the State of California.

13.   Defendant purposefully availed itself of the privilege of conducting activities within the State of California, thus invoking the benefits and protections of its laws.

14.   Defendant advertises and sell goods, specifically Roundup, in Ventura County, California.

## FACTUAL ALLEGATIONS

**A.   Warnings on Roundup Products at Defendant's Retail Locations are Inadequate.**

15.   Roundup is sold at Lowe's locations throughout the United States, including California. Its labeling is not altered between manufacture and points of sale at Defendant's retail locations. An exemplar picture of the Roundup's front label is attached hereto as "Exhibit A."

16.   As indicated on Roundup's labeling, glyphosate is the active ingredient in Roundup. *Id.* Glyphosate is a nonselective herbicide that inhibits plant growth through interference with the production of essential aromatic amino acids. It was discovered to be an herbicide in 1970 and was first brought into the market as Roundup by Monsanto Company in 1974.

17.   Roundup's labeling provides certain warnings, such as, "Keep Out of Reach of Children" and "Caution." But the only identified hazard identified is that it may cause "moderate eye irritation."

18.     This warning gives the false impression eye irritation is the only risk posed by Roundup, when in fact, glyphosate is known to have links to cancer, as discussed more fully herein.

19.     Defendant thus fails to warn consumers of the potential carcinogenic risks of using Roundup.

20.     Defendant's conduct is especially egregious considering it also fails to include proper use instructions for Roundup.

21.     As a retail distributor of Roundup, Defendant is provided a Safety Data Sheet ("SDS")[1] by the manufacturer, which provides detailed information as to the products' hazards.

22.     The SDS for Roundup advises, "[i]nhalation and skin contact are expected to be the primary routes of occupational exposure to glyphosate."[2]

23.     Despite its knowledge of the SDS, Defendant does not warn consumers they may be exposed to glyphosate through inhalation and skin contact.

24.     Defendant further omits proper use instructions, e.g. advising consumers to use a gas mask respirator when using Roundup.

25.     Reasonable consumers, like Plaintiff, who have purchased Roundup would not have done so had they known of its carcinogenic risks, or had Defendant provided a warning on how to minimize these risks.

26.     Defendant was aware of the present and substantial danger to consumers while using or misusing the Product in an intended and reasonably foreseeable way and has not disclosed the potential risks to consumers.

---

[1] The Hazard Communication Standard (HCS) (29 CFR 1910.1200(g)), revised in 2012, requires that the chemical manufacturer, distributor, or importer provide Safety Data Sheets (SDSs) (formerly MSDSs or Material Safety Data Sheets) for each hazardous chemical to downstream users to communicate information on these hazards. The information contained in the SDS is largely the same as the MSDS, except now the SDSs are required to be presented in a consistent user-friendly, 16-section format. This brief provides guidance to help workers who handle hazardous chemicals to become familiar with the format and understand the contents of the SDSs.
[2] Material Safety Data Sheet, Roundup Weed & Grass Killer 1 Ready-To-Use, #7070, **EPA REG. NO.:** 71995-23 **PN:** 7037 (October 31, 2000).

**B.     The IARC Classification of Glyphosate.**

27.     The International Agency for Research on Cancer ("IARC"), an intergovernmental cancer agency within the World Health Organization ("WHO") of the United Nations, was tasked in 2015 with conducting and coordinating research into the causes of cancer it pertained to glyphosate.

28.     In March 2015, an IARC "Working Group" of 17 experts from 11 countries convened to evaluate several insecticides and herbicides, including diazinon, tetrachlorvinphos, malathion, parathion, and glyphosate. The evaluation was based on a cumulative review of all publicly available and pertinent scientific studies. Some of the studies pertained to people exposed to through their jobs, such as farmers. Others were experimental studies on cancer and cancer-related effects in experimental systems. The IARC Working Group's full monograph was published on July 29, 2015.

29.     In its monograph, the IARC Working Group classified glyphosate as a Class 2A herbicide, which means it is probably carcinogenic to humans. It concluded non-Hodgkin lymphoma was most associated with glyphosate exposure.

30.     The IARC also found that glyphosate caused DNA and chromosomal damage in human cells.

31.     The IARC's conclusions were consistent with scientific developments that had occurred in prior decades.

**C.     Early Studies on Roundup's Carcinogenic Properties.**

32.     Defendant should have been aware of glyphosate's carcinogenic properties before or during the Class Period (the four years preceding the filing of this Complaint).

33.     On March 4, 1985, a group of the Environmental Protection Agency's ("EPA") Toxicology Branch conducted a study to evaluate the potential oncogenic (i.e., potential to cause cancer) responses on mice. The group published a

memorandum, which "classified Glyphosate as a Category C oncogen," meaning it is a possible human carcinogen.

34.   The findings of the 1985 EPA study were initially challenged by the EPA in 1991, which published a Memorandum entitled, "Second Peer Review of Glyphosate." The Memorandum changed glyphosate's classification to Group E (evidence of non-carcinogenicity for humans). Yet two peer review committee members did not concur with the conclusions, and the Memorandum itself "emphasized however, that designation of an agent in Group E is based on the available evidence at the time of evaluation and should not be interpreted as a definitive conclusion that the agent will not be a carcinogen under any circumstances."

35.   However, further studies and developments indicated glyphosate indeed posed (and still poses) a definite carcinogenic effect on humans.

36.   In 1996, the New York Attorney General sued MONSANTO COMPANY for false and misleading advertising by touting its glyphosate-based Roundup products as, e.g.,  "safer than table salt" and "practically non-toxic" to mammals, birds, and fish.

37.   On November 19, 1996, Monsanto entered into an Assurance of Discontinuance with New York Attorney General, in which Monsanto agreed to alter the advertising, removing from advertisements that represent, directly or by implication, that the weed killers were biodegradable and environmentally friendly. Monsanto also agreed to pay $50,000 toward New York's costs of pursuing the case. At the time, New York was the only state to object to the advertising claims.

38.   In 1997, Chris Clements, *et al.* published a study entitled, "Genotoxicity of Select Herbicides in *Rana catesbeiana* Tadpoles Using the Alkaline Single-Cell Gel DNA Electrophoresis (Comet) Assay." Genotoxicity refers to the property of chemical agents which cause damage to genetic information within a cell causing mutations, which may lead to cancer. In Clements' publication, tadpoles were

7

exposed to various herbicides, including Roundup, for a 24-hour period. Roundup-treated tadpoles showed "significant DNA damage when compared with unexposed control animals."

39.    In 1999, Lennart Hardell and Mikael Eriksson published a study entitled, "A Case–Control Study of Non-Hodgkin Lymphoma and Exposure to Pesticides," which consisted of a population-based case–control study in northern and middle Sweden encompassing 442 cases and twice as many controls was performed. Exposure data were ascertained by comprehensive questionnaires, and the questionnaires were supplemented by telephone interviews. The results indicated exposure to glyphosate and other herbicides yielded increased risks for Non-Hodgkin Lymphoma ("NHL").

40.    In 2002, Julie Marc, *et al.* published a study entitled, "Pesticide Roundup Provokes Cell Division Dysfunction at the Level of CDK1/Cyclin B Activation." The study found Defendant's Roundup caused delays in the cell cycles of sea urchins. It further noted the deregulations of cell cycle checkpoints are *directly linked* to genomic instability, which can generate diseases and cause cancer. The findings led to the conclusion Roundup "causes changes in cell cycle regulation that may raise questions about the effect of this pesticide on human health."

41.    In 2003, A. J. De Roos, et al. published a study entitled, "Integrative assessment of multiple pesticides as risk factors for non-Hodgkin's lymphoma among men," which "[r]eported use of several individual pesticides was associated with increased NHL incidence, including . . . glyphosate. A subanalysis of these 'potentially carcinogenic' pesticides suggested a positive trend of risk with exposure to increasing numbers."

42.    In 2004, Julie Marc, *et al.* published another study entitled, "Glyphosate-based pesticides affect cell cycle regulation." In that study, which tested Roundup 3plus on sea urchin eggs, determined "glyphosate-based pesticides are clearly of human health concern by inhalation in the vicinity of spraying," given the "molecular

CLASS ACTION COMPLAINT

link between glyphosate and cell cycle dysregulation." It observed, "roundup may be related to increased frequency of non-Hodgkin's lymphoma among farmers, citing the study by A. J. De Roos., *et al*.

43. In 2008, Mikael Eriksson, *et al.* published a study entitled, "Pesticide exposure as risk factor for NHL including histopathological subgroup analysis," based on a case-control study of exposure to various pesticides as a risk factor for NHL. Eriksson's study strengthened previous associations between glyphosate and NHL.

44. In 2009, France's highest court ruled that Monsanto had not told the truth about the safety of Roundup. The French court affirmed an earlier judgment that Monsanto had falsely advertised its herbicide Roundup as "biodegradable" and that it "left the soil clean."

45. Also in 2009, Nora Benachour and Gilles-Eric Seralini published a study entitled, "Glyphosate formulations induce apoptosis and necrosis in human umbilical, embryonic, and placental cells," which examined the effects of four different Roundup formulations on human umbilical, embryonic, and placental cells—at dilution levels far below agricultural recommendations. The study found the formations caused cell death in a few hours in a cumulative manner, caused DNA damage, and found that the formulations inhibit cell respiration. In addition, it was shown the mixture of the components used as Roundup adjuvants, particularly POEA (polyoxyethyleneamine) *amplified the action of the glyphosate*. The Roundup adjuvants actually changed human cell permeability and increased the toxicity of glyphosate alone.

**D. Glyphosate-Based Herbicides, Including Roundup, are Banned Throughout the World.**

46. Following the IARC's report on glyphosate, several countries have issued outright bans or restrictions on glyphosate herbicides, including Roundup.

47.    In May 2015, the Netherlands banned all non-commercial use of glyphosate.    *See*    https://www.collective-evolution.com/2015/05/30/why-the-netherlands-just-banned-monsantos-glyphosate-based-herbicides/.

48.    In 2016, Italy adopted a law prohibiting the use of glyphosate in areas frequented by the public or by "vulnerable groups" including children and the elderly and in    the    pre-harvest    phase    in    agriculture.    *See* https://www.soilassociation.org/news/2016/august/italy-bans-toxic-glyphosate/.

49.    In June 2017, the Flemish government approved a ban on glyphosate for individual-use.    *See*    https://www.brusselstimes.com/all-news/belgium-all-news/43150/flemish-government-approves-ban-on-glyphosate-for-individuals/.

50.    In September 2018, the agriculture ministry of the Czech Republic stated the country would ban the blanket use of glyphosate as a weedkiller and as a drying agent.    *See*    https://phys.org/news/2018-09-czech-republic-restrict-glyphosate-weedkiller.html.    The   ban   came   into   effect   on   January   1,   2019.   *See* http://www.arc2020.eu/czech-out-this-roundabout-way-to-not-ban-roundup/.

51.    In October 2018, the Indian state of Punjab banned the sale of glyphosate.    *See*    https://www.thehindu.com/news/national/other-states/punjab-government-bans-sale-of-herbicide/article25314146.ece. And in February of 2019, the Indian state of Kerala followed suit, issuing a ban on the sale, distribution and use of glyphosate. *See* https://www.thenewsminute.com/article/kerala-government-bans-glyphosate-deadly-weed-killer-96220.

52.    In January 2019, French authorities banned the sale of Roundup following a court ruling that regulators failed to take safety concerns into account when    clearing    the    widely    used    herbicide.    *See* https://www.france24.com/en/20190116-weedkiller-roundup-banned-france-after-court-ruling. In April 2019, a French appeals court ruled Bayer's Monsanto business was liable for the health problems of a farmer who inhaled Roundup. *See* fhttps://www.insurancejournal.com/news/international/2019/04/11/523456.htm.

53.     In March 2019, Vietnam announced it has banned the import of all glyphosate-based herbicides. *See* https://sustainablepulse.com/2019/03/25/vietnam-bans-import-of-glyphosate-herbicides-after-us-cancer-trial-verdict/#.XS-xCT9Kh9O.

54.     On July 2, 2019, Austria's lower house of parliament passed a bill banning all uses of glyphosate. According to recent reports it is likely to pass Austria's upper house and is poised to become law. *See* https://www.reuters.com/article/us-austria-glyphosate/austrian-parliament-backs-eus-first-total-ban-of-weedkiller-glyphosate-idUSKCN1TX1JR.

55.     Several municipalities and regions in Spain, the United Kingdom, and the United States, have also banned glyphosate herbicides.

**E.     Monsanto Loses Three Verdicts after Roundup is Found to Cause Cancer in Humans.**

56.     On August 10, 2018, a unanimous California jury in *Johnson v. Monsanto Co.,* No. CGC16550128 (Cal. Super. Ct., Cnty. of S.F.) held MONSANTO COMPANY's Roundup and Ranger Pro herbicides were unsafe and were a substantial factor in causing harm to the plaintiff.  The jury also found MONSANTO COMPANY failed to adequately warn customers of the risks associated with its Roundup and stronger Ranger Pro products, and that the company acted with malice or oppression.

57.     On March 27, 2019, a unanimous California jury in *Hardemon v. Monsanto Co.*, No. 3:16-mc-80232 (N.D. Cal.) found MONSANTO COMPANY liable for failing to warn Roundup could cause cancer, liable for negligence, and liable in a design defect claim.

58.     On May 13, 2019, a California jury found MONSANTO COMPANY likely caused a couple's cancer in *Pilliod v. Monsanto Co.,* No. RF17862702 (Cal. Super. Ct., Cnty. of Alameda). The jury found on a preponderance of the evidence Roundup was a significant contributing factor in causing the plaintiff's NHL.

//

**F.      Plaintiff's Purchase of Roundup from Defendant.**

59.      Plaintiff routinely purchased a Roundup Ready-to-Use Weed & Grass Killer product during the Class Period from a Lowe's retail location in Ventura County, California. Plaintiff recalls paying approximately $12-$15 per bottle.

60.      When Plaintiff purchased Roundup, nothing on the product's label or in Defendant's advertising, marketing (including weekly ads, mailers and in-store Point of Sale (POS) displays) made any indication that the product or its ingredients contained any carcinogenic agents or posed the risk of cancer.

61.      Had Plaintiff had known the carcinogenic properties of Roundup and its links to cancer at the time of purchase, he would not have bought it.

## CLASS ALLEGATIONS

62.      Plaintiff brings this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Class (the "Class"):

**All persons who purchased, in California, at least one Roundup product from Lowe's, for personal use and not for re-sale.**

63.      Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment.

64.      Specifically excluded from the proposed Class is Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, or any of them. Also excluded from the proposed Class are the Court, the Court's immediate family and Court staff.

### Federal Rules of Civil Procedure, Rule 23(a) Factors

65.      **Numerosity**. Membership in the Class is so numerous that separate joinder of each member is impracticable. The precise number of Class members is

unknown at this time but can be readily determined from Defendant's records. Plaintiff reasonably estimates that there are tens of thousands of persons in the Class.

66. **Adequacy of Representation**. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously. Plaintiff is a member of the Class described herein and does not have interests antagonistic to, or in conflict with, the other members of the Class.

67. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class purchased Defendant's Roundup products which fail to disclose the carcinogenic properties of Roundup and/or its active ingredient glyphosate and fail to provide proper use instructions.

68. **Existence and Predominance of Common Questions of Law and Fact.** There are numerous and substantial questions of law and fact common to all Class Members sufficient to satisfy Rule 23(a), and that control this litigation and predominate over any individual issues for purposes of Rule 23(b)(3). Included within the common questions are:

   a. Whether the Roundup products (and/or their ingredients) contain carcinogenic properties and/or poses a risk of cancer;

   b. Whether the existing labels on the Roundup products were adequate;

   c. Whether Defendant misrepresented or failed to disclose material facts to Plaintiff and Class members regarding the carcinogenic properties of Roundup and its ingredients;

   d. Whether Defendant's failure to warn Plaintiff and members of the Class of Roundup's carcinogenic properties is material to reasonable consumers;

   e. Whether Defendant's marketing, distribution and/or sale of Roundup is likely to deceive reasonable consumers;

f.  Whether Defendant's marketing, distribution and/or sale of Roundup caused Plaintiffs and the Class to suffer economic harm;

g.  Whether Defendant violated California Civil Code section 1750, *et seq.*;

h.  Whether Defendant violated California Business and Professions Code section 17200, *et seq.*;

i.  Whether Plaintiff and the Class are entitled to injunctive relief requiring Defendant to disclose Roundup's carcinogenic properties and/or its risk of causing cancer;

j.  Whether Plaintiffs are entitled to restitution and if so, the appropriate measure;

k.  Whether compensatory, consequential and punitive damages ought to be awarded to Plaintiff and Class members;

l.  Whether Plaintiff and the Class are entitled to attorneys' fees and costs, and in what amount; and.

m. Whether Plaintiff and the Class are entitled to declaratory and/or other equitable relief.

## Federal Rules of Civil Procedure, Rule 23(b)(2) Factors

69.     Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual member of the Class that would establish incompatible standards of conduct for Defendant.

70.     Injunctive relief is necessary to prevent further fraudulent and unfair business practices by Defendant. Money damages alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to conceal the carcinogenic properties of their Roundup products and the cancer risks posed to consumers.

CLASS ACTION COMPLAINT

Federal Rules of Civil Procedure, Rule 23(b)(3) Factors

71. **Common Issues Predominate**: As set forth in detail hereinabove, common issues of fact and law predominate because Plaintiff's claims are based on a deceptive common course of conduct. Whether Defendant's conduct is likely to deceive reasonable consumers and violate the CLRA and the UCL is common to all members of the Class and are the predominating issues, and Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

72. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a. Given the size of the claims of individual Class members, as well as the resources of Defendant, few Class members, if any, could afford to seek legal redress individually for the wrongs alleged herein;

b. This action will permit an orderly and expeditious administration of the claims of Class members, will foster economies of time, effort, and expense ad will ensure uniformity of decisions;

c. Any interest of Class members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments and would create a burden on the court system; and

d. Without a class action, Class members will continue to suffer damages, Defendant's violations of law will proceed without remedy, and Defendant will continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct. Plaintiff and Class members have suffered damages as a result of Defendant's unlawful and unfair conduct. This action presents no difficulties that will impede its management by the Court as a class action.

73.    **Notice to the Class:** Notice can be accomplished by publication for most Class members.

74.    Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

75.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## CLAIMS FOR RELIEF

76.    Based on the foregoing allegations, Plaintiff's claims for relief include the following:

## FIRST CAUSE OF ACTION

**Violations of the Consumer Legal Remedies Act**
***California Civil Code* § 1750, *et seq*.**
**(on behalf of the Class)**

77.    Plaintiffs herby incorporate by reference each of the preceding allegations as if fully set forth herein.

78.    Plaintiff brings this claim under California Civil Code § 1750, *et seq.*, the CLRA, on behalf of himself and the Class, who were subject to Defendant's above-described unfair and deceptive conduct.

79.    As alleged hereinabove, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's actions as set forth herein.

80.    Plaintiff and members of the Class are consumers as defined by California Civil Code section 1761(d). The Roundup products are goods within the meaning of California Civil Code section 1761(a).

81.    Plaintiff is concurrently filing the declaration of venue required by California Civil Code § 1780(d) with this complaint.

82. Defendant engaged in the marketing (including but not limited to weekly ads, mailers and POS displays), distribution and/or sale of the Roundup, which contains the active ingredient glyphosate, and contains adjuvants, including POEA.

83. In the course of their business, Defendant failed to disclose Roundup's carcinogenic properties and/or its potential to cause cancer, in violation of the CLRA, <u>California Civil Code</u> section 1750, *et seq.*

84. Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by <u>California Civil Code</u> section 1770(a) in transactions with Plaintiff and members of the Class, which were intended to result in, and did result in, the sale of its Roundup products:

    a. By failing to disclose Roundup's carcinogenic properties and/or its potential to cause cancer, and by misleading consumers about Roundup's safety for personal use, Defendant is representing Roundup has "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," in violation of <u>Civ. Code</u> § 1770(a)(5);

    b. By failing to disclose Roundup's carcinogenic properties and/or its potential to cause cancer, and by misleading consumers as to Roundup's safety for personal use, Defendant is representing Roundup "of a particular standard, quality, or grade . . . if they are of another," in violation of <u>Civ. Code</u> § 1770(a)(7); and,

    c. By failing to disclose Roundup's carcinogenic properties and/or its potential to cause cancer, and by misleading consumers as to Roundup's safety for personal use, Defendant is "[a]dvertising goods or services with intent not to sell them as advertised," in violation of <u>Civ. Code</u> § 1770(a)(9).

85. Defendant's omissions were material in that they would be a substantial factor in deciding whether to buy a Roundup product and were likely to deceive reasonable consumers.

86.    Defendant concealed and continues to conceal material facts concerning the probable carcinogenic nature of its Roundup products. Plaintiff did not know Defendant's Roundup products posed the risk of cancer at the time he purchased the product and, had he been aware of these material facts, Plaintiff would not have purchased Roundup.

87.    Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

88.    Defendant is or should be aware (1) in 2015, the IARC Working Group of the World Health Organization classified Roundup's active ingredient glyphosate as a Class 2A herbicide, meaning it is probably carcinogenic to humans; (2) decades of scientific research and studies have linked glyphosate to DNA damage, genotoxicity, genomic instability, cell cycle dysregulation, and NHL; (3) various countries and municipalities throughout the world have banned glyphosate due to its cancer risks; and (4) Monsanto Company has lost several verdicts, in which cancer patients established a causal link between the use of Roundup and their own cancer.

89.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA because Defendant continues to sell Roundup while failing to disclose its probable carcinogenic nature, and has thus injured and continues to injure Plaintiff and the Class.

90.    Plaintiff and other members of the Class have suffered injury in fact and have lost money as a result of Defendant's deceptive conduct. Plaintiff would not have purchased Roundup had he known it posed the risk of cancer at the time he purchased it.

91.    Pursuant to California Civil Code § 1780(a), Plaintiff seeks injunctive relief compelling Defendant to (1) recall all Roundup products currently in distribution with their material omissions, (2) permanently refrain from labeling, selling, marketing and advertising its Roundup products in the future with these

material omissions, and (3) disclosing on each Roundup product, clearly and conspicuously, that its active ingredient glyphosate is a Class 2A herbicide, meaning it is probably carcinogenic to humans. Plaintiff and members of the Class shall be irreparably harmed if such an order is not granted.

92. Plaintiff sent Defendant notice advising Defendant it violated and continues to violate, Section 1770 of the CLRA (the "Notice") concurrently with the filing of this complaint. The Notice complies in all respects with Section 1782 of the CLRA. Plaintiff sent the Notice by Certified U.S. Mail, return-receipt requested to Defendant at Defendant's principal place of business. Plaintiff's Notice advised Defendant it must correct, repair, replace or otherwise rectify its conduct and the product alleged to be in violation of Section 1770, including that Defendant refrain from labeling, selling, marketing and advertising its Roundup products in the future with these material omissions, and provide corrective advertising and provide restitution to its customers who paid money to Defendant for said products. However, Plaintiff advised Defendant that if it fails to respond to Plaintiff's demand within thirty (30) days of receipt of the Notice, pursuant to Sections 1782(a) and (d) of the CLRA, Plaintiff will amend this complaint to seek restitution, actual damages and punitive damages.

## SECOND CAUSE OF ACTION

**Violations of Unfair Competition Law (UCL) – Unfair and Fraudulent Prongs**
***California Business and Professions Code §17200, et seq.***
**(on behalf of the Class)**

93. Plaintiff hereby incorporates by reference each of the proceeding allegations as if fully set forth herein.

94. As alleged hereinabove, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth herein. Specifically, prior to filing this action, Plaintiff purchased Roundup for his own personal use. In so doing, he relied upon

CLASS ACTION COMPLAINT

the representations and omissions referenced above and believed Roundup was safe for personal use, and was not aware of its carcinogenic properties and/or its potential to cause cancer.

95.    Defendant's conduct in labeling, selling, marketing and advertising Roundup is likely to deceive reasonable consumers. Indeed, reasonable consumers would not pay money for a product that poses a cancer risk, absent adequate disclosures and proper use instructions.

96.    Defendant is aware that its conduct is likely to deceive reasonable consumers.

97.    As alleged in detail above, Plaintiff would not have purchased Roundup from Defendant had he known it had carcinogenic properties and/or posed the risk of cancer at the time he purchased it.

98.    The misrepresentations, conduct and inadequate disclosures by Defendant are material and constitute an unfair and fraudulent business practice within the meaning of California Business & Professions Code § 17200, *et seq.*

99.    Defendant's business practices, as alleged herein, are unfair because: (1) the injury to the consumer is substantial; (2) the injury is not outweighed by any countervailing benefits to consumers or competition; and (3) consumers could not reasonably have avoided the injury because Defendant misled the consuming public through inadequate warnings as set forth herein.

100.    Defendant's business practices are also unfair because their conduct in labeling, selling, marketing and advertising Roundup offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. Such public policy is tethered to a specific constitutional and statutory provisions, including California's consumer protection statutes.

101.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described above.

102.   Defendant's business practices as alleged herein are fraudulent because they are likely to deceive customers into believing that Roundup is actually safe for personal use. Defendant knows its omission of any warnings pertaining to Roundup's carcinogenic properties will deceive consumers into purchasing a product that may indeed be harmful.

103.   Plaintiffs were misled into purchasing Roundup by Defendant's deceptive and fraudulent conduct as alleged above.

104.   Plaintiffs were misled and, because the omissions were uniform and material, presumably believed Roundup was safe for personal use.

105.   Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct of unfair competition since Defendant is marketing and selling Roundup in a manner likely to deceive the public.

106.   Pursuant to section 17203 of the UCL, Plaintiff seeks an order of this Court enjoining Defendant from engaging in the unfair and fraudulent business practices alleged herein in connection with the sale of Roundup.

107.   Additionally, Plaintiff seek an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of the unfair and fraudulent business practices alleged herein.

### THIRD CAUSE OF ACTION

**Violations of Unfair Competition Law (UCL) – Unlawful Prong**
***California Business and Professions Code §17200, et seq.***
**(on behalf of the Class)**

108.   Plaintiffs herby incorporate by reference each of the preceding allegations as if fully set forth herein.

109.   Defendant's actions, as alleged herein, constitute illegal and unlawful business practices in violation of California Business and Professions Code § 17200, *et seq.*

110. Defendant is unlawfully labeling, selling, marketing and advertising Roundup. Indeed, Defendant's violations of the CLRA and the UCL alleged above, constitute predicate acts which violate the UCL's 'unlawful' prong.

111. Plaintiff was misled because Defendant's misrepresentations and omissions, described above, were uniform and material. Plaintiff reasonably relied on those misrepresentations and material omissions, believing based thereon that Roundup was safe for personal use. Plaintiff was not aware of its carcinogenic properties and/or its potential to cause cancer.

112. Pursuant to section 17203 of the UCL, Plaintiff seeks an order of this Court enjoining Defendant from engaging in the unfair and fraudulent business practices alleged herein in connection with the marketing (including ads, mailers and POS displays), distribution and sale of Roundup.

113. Additionally, Plaintiff seek an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of the unfair and fraudulent business practices alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the members of the Class defined herein, prays for judgment and relief on all Causes of Action as follows:

A. An order certifying that the action may be maintained as a Class Action;

B. An order enjoining Defendant from pursuing the policies, acts, and practices complained of herein and requiring Defendants to pay restitution to Plaintiffs and all members of the Class;

C. Pre-judgment interest from the date of filing this suit;

D. Restitution;

E. Reasonable attorneys' fees;

F. Costs of this suit; and

G. Such other and further relief as the Court may deem necessary or appropriate.

### JURY DEMAND

Plaintiff and the Class by counsel hereby request a trial by jury as to all issues so triable.

Dated: August 6, 2019                    Respectfully submitted,

_____

Gillian L. Wade
Sara D. Avila
Marc A. Castaneda
**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**

*Counsel for Plaintiffs and the Proposed Class*

CLASS ACTION COMPLAINT